## CIVIL MINUTES – GENERAL

Case No. SA CV 19-2027-DOC-JDE                    Date:  February 24, 2020

Title: SYED AHMED v. BANK OF AMERICA N.A. ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|:---:|:---:|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|:---:|:---:|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [22] AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [26]**

Before the Court is Plaintiff Syed Ahmed's ("Plaintiff") Motion to Remand Case to Orange County Superior Court ("Motion") (Dkt. 22). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having reviewed the moving papers submitted by the parties, the Court GRANTS Plaintiff's Motion to Remand.

## I.    Background

### A.    Facts

The following facts are drawn from Plaintiff's Third Amended Complaint ("TAC") (Dkt. 14). This action concerns the property at 37 Hedgerow in Irvine, California (the "Property"), which Plaintiff claims to own. TAC ¶ 1. As of September 2013, Plaintiff had two deeds of trust on the Property: one with Defendant NewRez LLC (doing business as Shellpoint Mortgage Servicing), and one with Defendant Bank of New

York Mellon ("BNYM"). *Id.* ¶ 10-11. Plaintiff was current in his payments to Defendant Shellpoint, but in default with respect to Defendant BNYM; although Plaintiff was in loan modification review, a foreclosure sale was scheduled for September 3, 2013. *Id.* ¶ 11. Plaintiff was informed by a Bank of America representative (the servicer representing Defendant BNYM) that the foreclosure sale would be postponed pending loan modification review, but when it became apparent to Plaintiff that the sale would proceed, Plaintiff filed for bankruptcy to forestall the sale. *Id.* ¶¶ 12-13. Nevertheless, Defendant BNYM foreclosed on the Property on September 3, 2013; after contacting Bank of America, a representative told Plaintiff that "the sale would be rescinded quickly." *Id.* ¶ 14.

Subsequently, Defendant Shellpoint stopped accepting Plaintiff's mortgage payments due to the foreclosure, and as a result, Plaintiff went into default with Defendant Shellpoint as well. *Id.* ¶ 15. Eventually, Defendant BNYM rescinded the sale and granted Plaintiff a loan modification. *Id.* ¶¶ 16, 18. At Defendant Shellpoint's suggestion, Plaintiff also applied for a loan modification with Defendant Shellpoint. *Id.* ¶¶ 17, 19-20. However, while Defendant Shellpoint was reviewing Plaintiff's application, Defendant Shellpoint scheduled a foreclosure sale for January 28, 2019. *Id.* ¶ 21. Meanwhile, in December 2018, Bank of America and Defendant BNYM bid on and purchased the first trust deed. *Id.* ¶ 23. Plaintiff believes Bank of America and Defendant BNYM overpaid by over $881,841, significantly increasing Plaintiff's liability. *See id.* ¶¶ 24, 26-27.

While the loan modification review was still pending, Defendant Shellpoint foreclosed on the Property on January 28, 2019. *Id.* ¶ 28. Plaintiff believes Bank of America and Defendant BNYM encouraged Defendant Shellpoint to go through with the foreclosure to allow them to obtain possession of the Property. *Id.*

On or about August 14, 2019, Plaintiff received notice from Defendant Specialized Loan Servicing LLC ("SLS") that it was taking over as the loan servicer. *Id.* ¶ 31. At that time, Plaintiff was negotiating with Bank of America to repurchase or refinance the loan (i.e., the first and second deeds of trust, both of which were now owned by Defendant BNYM). *See id.* ¶¶ 31-32.

Plaintiff believes Defendants' conduct—i.e., negotiating for loan modifications while simultaneously moving forward with foreclosures—is commonly referred to as "dual tracking" and has been prohibited by the California Homeowner Bill of Rights since January 1, 2013. *Id.* ¶ 33.

### B.    Procedural History

Plaintiff originally filed suit in the Superior Court of California, County of Orange; his Second Amended Complaint ("SAC") was filed on September 23, 2019. Dkt. 1-1. Because the SAC included a federal cause of action under the Truth in Lending Act, Defendant NewRez LLC/Shellpoint removed the case to this Court on October 23, 2019. Plaintiff filed the Third Amended Complaint (Dkt. 14) on December 4, 2019, bringing the following six causes of action:

> (1) violation of Homeowner's Bill of Rights;
> (2) intentional misrepresentation;
> (3) violation of Business and Professions Code section 17200;
> (4) promissory estoppel;
> (5) to set aside trustee's sale and void or cancel trustee's deed upon sale; and
> (6) quiet title.

See generally TAC.

Having removed the only federal cause of action, Plaintiff filed the instant Motion to Remand (Dkt. 22) on December 27, 2019. On January 17, 2020, Defendant SLS filed an Opposition (Dkt. 31), and Plaintiff submitted his Reply (Dkt. 33) on January 27, 2020.

## II.    Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted). A federal court may order remand for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c).

Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For a case to arise

under federal law, "a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law. Federal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated." *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir. 2011) (quoting *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004)). Additionally, when "an area of state law has been completely pre-empted" by federal law, a purported state law claim "is considered, from its inception, a federal claim, and therefore arises under federal law" within the meaning of § 1331. *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* A plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)). If the plaintiff has not clearly or unambiguously

alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148-49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101-02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c).

## III.   Discussion

Defendants argue that this Court has both federal question jurisdiction and diversity jurisdiction in this action. Plaintiff disagrees with both contentions. The Court addresses each basis for subject matter jurisdiction in turn.

### A.  The Court Declines to Exercise Federal Question Jurisdiction

As Defendants observe, when this case was removed, the SAC included a federal cause of action, and Defendants urge the Court to exercise jurisdiction as it existed at the time of removal. Plaintiff argues that because the TAC has dismissed Plaintiff's federal claims, the Court should find that no basis exists for federal question jurisdiction.

28 U.S.C. § 1367 provides, in relevant part, that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if— . . . (c) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although writing before the 1990 passage of § 1367, the Supreme Court articulated a similar rule in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988). There, as here, the plaintiff amended their complaint to remove their federal claims and asked that the amended complaint be remanded. In affirming the district court's decision to remand, the Supreme Court held that, when the basis for federal question jurisdiction has been amended out of the complaint, retaining jurisdiction is within the district court's discretion, taking into account "the values of economy, convenience, fairness, and comity." *Cohill*, 484 U.S. at 351; *see also Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 935, 937-38 (9th Cir. 2003) (holding that, when "the federal question that justified removal ha[s] disappeared . . . the district court has discretion to exercise supplemental jurisdiction over the remaining state law claims"). The Court in *Cohill* also noted that remand is especially indicated when the federal claims have been "eliminated at an early stage of the litigation." *Cohill*, 484 U.S. at 351.

The Court finds, consistent with these principles, that the best course of action is to decline to exercise supplemental jurisdiction. This case is still at an early procedural stage, and remanding to Orange County Superior Court will harm neither the fairness nor the convenience of the proceedings. Additionally, given the proper parallel jurisdiction of the state courts, the limited jurisdiction of the federal courts, and the relative expertise of the two systems, the Court finds that comity and economy are best served by letting a state court decide disputes arising under state law.

As the Court will not exercise supplemental jurisdiction on the basis of the dismissed federal claim, the only remaining question is whether federal jurisdiction is independently established on diversity grounds.

### B. Diversity Jurisdiction Does Not Obtain Because Defendant Has Not Met Its Burden to Show That the Amount in Controversy Exceeds $75,000

The parties do not appear to dispute that they are completely diverse from one another, and the Court, in its own jurisdictional analysis, agrees as well. What the parties contest is the amount in controversy and how it should be measured. Defendants argue that the amount in controversy is either the value of the Property or the outstanding loan balance, each of which far exceeds $75,000. Plaintiff disagrees, arguing that he does not seek invalidation of the loan, and that Defendant has otherwise failed to demonstrate an amount in controversy in excess of $75,000.

As stated above, Defendant must show by a preponderance of the evidence that the amount in controversy is greater than $75,000. In support of this position, Defendant cites several cases in which the plaintiff sought to prevent a bank from selling or transferring property and in which the value of the property or the outstanding loan amount was used as the amount in controversy. *See* Opp'n at 8-9. However, unlike many wrongful foreclosure cases, in which the plaintiffs seek to invalidate the underlying loan, Plaintiff here represents that he "does not seek injunction and removal of all encumbrances." Reply at 5. Instead, Plaintiff only seeks to temporarily forestall foreclosure pending review and determination of his loan modification application. *Id.* at 5-6. Plaintiff concedes that Defendant would still have the Property as security on Plaintiff's loan obligations, and that judgment in Plaintiff's favor would not preclude a later foreclosure. *Id.* at 5-6.

Given the limited relief sought by Plaintiff, the Court agrees that the value of the Property or the outstanding loan balance do not correctly measure the amount in controversy. As found by another court in this district, because judgment for Plaintiff "would delay—not preclude—any foreclosure sale . . . the amount of the loan and the amount due thereunder are immaterial to the jurisdictional question." *Cross v. Home Loan Mortg. Corp.*, Case No. CV 11-04728 DMG (RZx), 2011 WL 2784417, at *3 (C.D. Cal. July 15, 2011) (citing *Chen v. Wells Fargo Bank, N.A.*, Case No. SA CV 10-1764-JST (FFMx), 2010 WL 4923045, at *2 (C.D. Cal. Dec. 2, 2010)). And Defendants have not given any other evidence that the amount-in-controversy requirement is satisfied.

Therefore, because Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court finds that it lacks diversity jurisdiction over this matter.

Because diversity jurisdiction does not obtain and the Court declines to exercise supplemental jurisdiction, the Court has no basis for jurisdiction over this case and will therefore remand. Although the Court grants the instant Motion, the Court warns Plaintiff and Plaintiff's counsel against bringing ill-considered federal claims and dismissing them after removal.

## IV.    Disposition

For the reasons set forth above, the Court GRANTS Plaintiff's Motion to Remand. Because the Court lacks jurisdiction over this matter, the Court also DENIES AS MOOT the pending Motion to Dismiss (Dkt. 26).

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                        Initials of Deputy Clerk: kd

CIVIL-GEN